We will now hear argument in the case of Day et al. v. Henry et al. Mr. Stanford, I believe. Yes, Your Honor. Thank you. May it please the Court, I'd like to reserve three minutes for rebuttal. Keep your eye on the clock. Thank you. The sale of alcohol has a complicated history in this country, and in this case it's subject to two separate constitutional provisions. Like any product, it's subject to the Commerce Clause, which guarantees free interstate commerce, but it's also a unique product, which is subject to the 21st Amendment that gives states quite broad regulatory power. In this case, those two conflict because Arizona has set up a system that discriminates against out-of-state retailers. The Supreme Court has struck the balance between those two, which says that the 21st Amendment, the regulation of alcohol, is subject to one part of the Commerce Clause, the non-discrimination principle. That is... Counsel, let me ask you this. If I understand the record correctly, your firm has been involved in virtually copycat litigation all over the country. Is that correct? I believe we're the only firm that's stupid enough to do these cases. Okay. So you're the experts in the area. You're here today. You want to get something that you feel you're going to get some traction. And as you know, the District Court kind of waffled on the standing issue. Yes, it did. Decided to, if you will, decide the merits. Wasn't sure about standing. What's your best argument that because of the redressability issue that there is standing in this case? Well, it starts from the premise of the previous case by the circuit in Tucson versus City of Seattle, which said that the standard for redressability is fairly moderate, and it's a question of likelihood, not absolute certainty. If the defendant enjoined the state from denying licenses and denying shipping privileges to out-of-state retailers and enjoined the provision that says any wine, a limited one, any wine coming across the border must be consigned to a wholesaler, then the record clearly shows that consumers will then do Internet purchases, and the record shows that there are 50 to 200 out-of-state retailers who have signed up for direct shipping privileges in those states that allow it. And it is so it is likely that wine retailers who are moving into the online interstate business, it's in their own economic interest to sell to people. Counsel, why is the standing issue in this case different than the one in Orion versus Applesmith? Well, Orion was a case involving a peculiar provision of California law. Obviously, this doesn't involve California law, and it was one, like this Court's previous decision in Blackstar Farms, where ultimately the Court found that the law was not discriminatory. It was burdensome. It was complicated, but it was not discriminatory. In this case, it is clear that the law is discriminatory. The state admitted it in its admissions that an in-state retailer can get a license and sell online and make home deliveries. There's no way that an out-of-state retailer can do that. Correct me if I'm wrong. I thought there were like four other circuits that have found that substantially similar three-tier arrangements were not discriminatory. Am I incorrect on that? There have been a total of five cases. Three of them, the initial case that influenced a lot of people was a Sixth Circuit case, Levenmoff v. Whitman. Now, the Sixth Circuit has since decided another case, Block v. Canepa, which kind of confines that case to its facts. It was because the concurring opinion in the original Levenmoff case had said, we don't really agree with Judge Suttner on the law of this, but we agree in this case that the record, the factual record, justifies what Michigan was doing because Michigan had a peculiar history of constantly limiting and limiting and limiting alcohol sales and online sales. They had had the ability to do online. They had repealed it for everyone. So it was a factual case. Then there's the First Circuit case, Ann Barbee Dwyer, that again reversed the district court who had followed these first couple of cases and said, no, this has to go back to some kind of balancing fact analysis. It's perfectly clear from Tennessee Wine and from Granholm that the court must look critically at whether the state has shown that this poses a unique alcohol related threat of some kind that is different than the same activity in the same product being sold by an in-state one, and then also whether or not nondiscriminatory alternatives, Granholm thought a permit system was the right one. Tennessee Wine looked at some others, whether or not a nondiscriminatory alternative would be possible. Do you think Tennessee Wine is your hook on discrimination? No, I think it's Granholm. Okay. Granholm was the one that involved interstate commerce. Tennessee Wine involved qualifications for an in-state residency license, and to some extent when they talk about the ease of regulation and in things like that, they're referring to the difference between those two. Tennessee Wine cited Granholm 38 times. Well, let me ask you this. I understand the Supreme Court to have said that the three-tier approach in most states is, I forget presumptively legal. So clearly Arizona has such a standard. What is it about Arizona's three-tier approach that gets it out of the, if you will, the penumbra of Supreme Court blessing that it's presumptively legal? Well, first of all, Tennessee Wine addressed that particularly and said that the dictum that has been floating through the previous Supreme Court cases about unquestionable legitimacy does not shield discriminatory laws. Okay, but that's just kind of a, you know, it's, you're taking the same thing and looking at it a different way. But what the Supreme Court looked at that said is essentially presumptively legal is different than what's happening in Arizona. There's a difference between a three-tier system, which is everybody gets a license, a producer, a retailer, and a discriminatory three-tier system where only in-state people can do that. No, what Tennessee Wine said at Granholm is there's nothing wrong with a three-tier system. And Arizona mostly has one, though it has exceptions for wineries. And we're talking about wine. So it's complicated in the wine cases because some wines produced both in-state and out-of-state, and that goes back to Blackstar Farms, can in fact be sold directly to consumers without going through the system. But if you want to be a retailer in Arizona, you must have a retail license, get your wine from wholesalers, and sell to consumers. How does the state, as you well know as an expert, alcohol is maybe not so much anymore for a long time. It was a unique substance. We had two constitutional amendments dealing with it, but the 21st amendment basically said, hey, states, you take over. We're gonna let you do this. We've got marijuana now and a few other things that have changed it in terms of its totality, but it still is considered a drug, if you will, that has serious adverse consequences for drivers, for health, for all kinds of other things. So I don't think you're disputing the fact that the state has a strong interest in regulating the purchase and use of alcohol, right? Absolutely. I'm not questioning that. So given that fact, given the state's strong interest, how does the state run afoul of the discrimination concept that you're referring to by having the three-tier approach? It doesn't as long as it lets out-of-state entities participate in that three-tier system. But can't they? I mean, I think the state's brief included examples of out-of-state companies that are licensed into Arizona, including big ones like BevMo and Total Wine and Walmart and places like that. These are not Arizona companies, but they have a storefront and a license and they receive wine through Arizona wholesalers. So doesn't that establish that out-of-state retailers can get a license in Arizona? Out-of-state retailers, anybody, an out-of-state person can become an in-state retailer. Sure. So you're equating having a license in Arizona as becoming an Arizona resident or an in-state person? You mentioned opening a storefront. That means you create an Arizona business. Grant Holmes specifically addressed that. And it said that a long history of cases in the Supreme Court said a state cannot require an out-of-state firm to become a resident in order to compete on equal terms. That was exactly the... Sorry, I interrupted. Well, the Arizona scheme requires licensure for both in-state retailers and out-of-state retailers. They both have to do it, right? No, it will not give a license to an out-of-state retailer. It will only give them a license to open a second business. I think we're talking about the same thing. There are licensure requirements, which I think are legitimate, unless you can point me to some case law that says that the state can't do that. And they apply equally to in-state retailers and companies that are out-of-state, like Walmart, who then can do what is required to get a license in Arizona. But Walmart hasn't moved their headquarters to Arizona. They haven't become an Arizona company. But they're not selling wine from the Walmart in California. In other words, interstate commerce, there's two separate questions. One is products moving in interstate commerce. And the other, and that's Grant Holmes. And the other is people, licensees in interstate commerce. That's Tennessee wine. And the court has consistently said those are two different things. Correct me if I'm wrong, but I thought Tennessee wine had a temporal requirement. You had to be present in the state for two years before you could get a license. So that was what was problematic. It was a complicated set of, they had all these alcohol, the devil's in the details of the weeds, they're complicated statutes. Tennessee wine, Tennessee had a series of three different residency requirements. The one that was at the core of Tennessee wine was the two-year residency requirement prior to applying for a license. Which does not apply in Arizona. Arizona doesn't have that requirement, correct? I do not know. I don't believe so. Do you want to save your time? It's up to you entirely. I would prefer to save the remaining of my time. And we'll have other questions for you when you come back. Now, as I understand it, we have two different counsel here. Ms. Davis for 13 minutes, is that right? And then Ms. Porter, is that correct, for two minutes? Okay, you each have your very own clock. Please proceed. Good morning. May it please the court, my name is Lucy Davis and I represent the state defendants. I'll start with Judge Smith, your question about standing. And just to be clear, the only way that the plaintiffs can get relief here is either for the three-tiered system to be struck down. Can you talk up a little bit? Yes, of course. Apologies. The only way for the plaintiffs to get relief here is either for the three-tiered system to be struck down, that's what would allow them to be able to purchase from retailers outside the state that are unlicensed, or for the legislature to make a different policy determination and create this permit that they are seeking. And so as to standing, you know, as to the former way that they would get relief, that's not what they've asked for. In their reply brief at 10 and 12 to 13, they say that they are expressly not challenging the licensed wholesaler requirement, requiring any retailer selling to Arizonans to purchase from a licensed wholesaler. What is your response regarding wineries and direct sales by wineries? That, of course, is a little different than the normal three-tier approach. Is it we don't worry about that because of de minimis non-curate lex or some other principle? Or why do we ignore that? A few important differences there, Your Honor. As a legal matter, you know, this court in Blackstar Farms found no discrimination among in-state, out-of-state wineries when analyzing that exception within the producer tier. And so it makes little sense to then use one tier to compare to the other for purposes of dormant commerce clause. They're not similarly situated. I take your question to be getting more to the practical realities. So there's three important differences. And we talk about this a little bit at pages 58 to 59 of our answering brief. So first, wineries are regulated by the federal government, and they can lose their federal permits if they violate state law. So automatically, we have a different incentive and oversight structure there. Second, wineries have a different relationship to the product when they're skipping the wholesaler tier and selling directly to consumers. It's a product they've produced, have a knowledge about the product, very little chance of selling, you know, counterfeit. And they have business and reputational reasons to further incentivize selling quality product and shipping it with integrity. So health and safety calculus is different there. And then third, there's just a fundamentally different effect on the three-tiered system when we're talking about direct shipment with wineries versus what plaintiffs want to be possible. And what they want to be possible destroys the three-tiered system, in effect. With wineries, it doesn't. So we think – I know your honors are very familiar with the three-tiered system, but, you know, at a high level, it creates this closed circuit between the producer and the consumer, excuse me. And you picture, you know, a shoot from the wineries to the consumers. That's the exception, but it doesn't destroy the system because there's still, from the state's perspective, absolute traceability between producer and consumer. And for some of the reasons that we've talked about why wineries are different, the legislature can shift some of those other responsibilities from the wholesaler tier to the wineries, such as taxation. And, again, calculus is different from health and safety. Let me ask you this. You mentioned that the federal government regulates the wineries. Does the state receive reports from the federal government or any kind of information that would help them, if you will, monitor what the wineries are doing in terms of sales? Does the state request records from the federal government? Yeah. Your Honor, that's a good question. My understanding is there's some communication. There might be reporting in both directions if, you know, there is some identification of an issue. I'm not, frankly, totally sure about the answer to that. I know that, you know, this isn't totally on the record, but when the state identifies wineries that might be shipping in illegally that aren't licensed, there's an education effort between the state and the wineries. So there might be something similar between the wineries and the federal government. And winery shipments are regulated by whom? Shipments themselves? Yes. Well, those would be subject to state laws. They've sent their shipping into Arizona. Okay. So, in effect, the state does monitor these a little differently than the others, but it does monitor them in terms of shipment. They have to comply with state law. Correct. And as the record indicates in Investigator Williams' affidavit, the state does conduct stings and such to check that, you know, age verification laws are being abided by and things like that. You know, when we're dealing with a winery, again, there's just a heavy incentive for them to want to comply with state law. If you don't have a retailer present here, there's very little the state can do to even know, you know, when they're going to ship, from where they're shipping, what they're shipping, and the ability to enforce and track is just completely different. So if there's a winery in Napa Valley and someone from Arizona goes there and they're doing wine tasting and they order four cases of whatever and have it shipped directly, what monitoring, what reporting, if any, does the state of Arizona get with respect to the shipment of wine by that Napa winery to the Arizona resident? If the Arizona resident purchased while they were there and the winery is shipping in, I think there might be reporting requirements for the wineries to give to the state, but they would certainly proffer those records if the state asked. I'm not totally sure about if they're just sui sponte. Does the state ask for those? I mean, or if they offered them, it's just coincidental? I mean, the state will ask for records if there's a complaint, you know, about age verification not being checked or things like that. The department is not, you know, super resourced, but between the last several years there's anywhere from 16 to 21 officers, so they're not, you know, able to cover the waterfront in terms of all shipments. So Mr. Tanford would say, well, what's the difference between that and someone in Ohio, not a winery but a seller of spirits, wants to sell directly to somebody in Arizona? Not too much, just a little bit. What's the difference? Sure. So, again, I have a legal answer and a practical answer. Okay. And I really do want to start with the legal because I think Your Honor's question, specifically Judge Beatty asking about what's the difference, that's really what this case is about. It's a physical presence case. It's not a direct shipment case. And I think some of the confusion arises from the briefs and the case law in that courts use direct shipment to describe three very different contexts, and Plaintiff's case, you know, requires sort of apples to oranges, comparing two concepts that are not similarly situated. As a practical matter, and this is what the record reflects, both the Williams Affidavit, Curtin Affidavit, and I would sum up the differences when a retailer is here versus not, in terms of incentives to comply and the ability for the state to monitor them and then the state's ability to take enforcement action when they don't comply. So if you have a retailer here, you know, they're within the state borders, subject to criminal enforcement, monetary fines, and, you know, they've necessarily invested time and energy to open the storefront and get licensed here. So the threat of losing their license is actually strong medicine for them. And when they are here, the state also gets the full benefit of, you know, partnership with wholesalers and local law enforcement to monitor and take actions if necessary. Wouldn't you accomplish much of that by just requiring out-of-state retailers to get an Arizona license and submit to various regulatory requirements? Along the lines of what plaintiffs are seeking, I take your question and be asking. I mean, you're saying that there's an interest for the state to be able to sort of watch what retailers are doing and how they're conducting their business and taxes. I get all that. That seems totally reasonable. I understand that. What I don't understand is why the only way you can accomplish that is if the retailer has a physical presence in Arizona. So to be sure, Arizona legislature, like other states, could pick a different way to do this, right, and create that permit. I think it's important to recognize that wouldn't be the three-tiered system anymore. Why is that? I don't understand that because the Supreme Court, in talking about the three-tiered system, says that system is basically separating the ownership interests between suppliers, wholesalers, and retailers. It doesn't mean – I don't understand the Supreme Court to be saying that the three-tier system has to be, like, all of that based in one location. Arizona could say, retailers, you have to buy from a licensed wholesaler. Whether that's an Arizona-licensed wholesaler or not, you have to buy from a licensed wholesaler, and you'd still have the three tiers. This is a really important point, so thank you, Your Honor. It's important to remember that under the 21st Amendment, each state is its own market. So we can't think about the three-tiered system as being stretched out over the whole country, right, where, like, a licensed wholesaler in one state is equivalent to a licensed wholesaler in another state. Each state is entitled to decide how they want alcohol, what laws they want alcohol to be subject to as it flows through the system. And the reason why the presence of retailers and wholesalers is really the meat of the three-tiered system is because that's the only way that a state can funnel all alcohol sales into the state through a defined channel that it can trace, like I was talking about earlier, and make sure that all of that alcohol has been subject to the state's taxation and health and safety checks along the way. So, you know, if a retailer isn't here, you've now, I mean, picture our closed circuit, right? What they want to be possible sort of cuts a gash in the end of that circuit and allows these new channels of alcohol from other states. And again, totally valid policy determination if a state weighs the risks and interest differently. But it's not a three-tiered system anymore in the way the Supreme Court has approved it because, again, we don't have that defined funnel anymore. And does that make sense? Not quite, but, I mean, the words make sense. I'm not sure that it makes sense logically in terms of how I'm reading the Supreme Court cases. Well, and I think the Supreme Court has recognized, I mean, maybe there's different ways to conceive of what a three-tiered system is. And if you think about it as just being about separation of tiers, then I take your point. But the way the Supreme Court has defined and approved of the three-tiered system is not just about separation. It's specifically approved of. So what do you make of when it talks about the three-tiered system and it goes through that whole history of like we saw that tide houses were a bad idea and so then we came up with this new structure to solve that problem. And it seems to me that while that structure solved that problem, we're now arguing that this structure solves a whole bunch of other problems. And those problems bleed into the control of interstate commerce, which is not what at least the history that the Supreme Court was talking about was the origin of the three-tiered system. I actually think that the way the Supreme Court has talked about it in North Dakota, Granholm, and then Tennessee wine is consistent with the history leading up to the 21st Amendment. Because as you know, the problem before the Wilson Act and even leading up to the Webb-Kenyon Act was that the states effectively had lesser power to regulate alcohol coming into their borders than alcohol that was originating within their borders. And Tennessee wine talks about how this created this favored status for out-of-state alcohol. And so that's consistent with this idea that the three-tiered system is meant to give the state equal power with respect to both of those things. And that's only possible if the state can set the same terms for how alcohol is going to cross into its borders as alcohol that's originating there. And I mean, I take your point with any other article of commerce and Mr. Tamford's point that when we think about interstate commerce, we're literally thinking about, you know, goods moving across state lines. But with alcohol and the 21st Amendment saying, you know, importation, the state has the ability to regulate that, we can't think about it in the same way. And the state does have unique power to regulate the terms of, like, literal importation differently than other goods. Does it make any difference—I apologize. You go ahead. Does it make any difference that we live in a modern age when computers and so on can help keep track of things? I'm a Californian. They're very, very good at deriving taxation and taxes from people all over the country. No problem at all. Arizona wants to tax alcohol. If, as my colleague suggested, there were a license requirement of someone out of state, albeit not having a physical location here, with computers and all that sort of thing, couldn't the state of Arizona simply get the same tax benefits, be able to pursue things as well as here? In other words, since we're dealing with dormant commerce clause kind of issues, why doesn't that make sense? Your Honor, I've run through my time. I want to be able to answer your question fulsomely. Thank you. So a few thoughts there. Of course the legislature could make a different determination and say, we care less about some of the interests. The current scheme serves to it. We want to open up the market. We'll enact a scheme to collect those taxes. That's not the current system, of course. And I think plaintiffs cite South Dakota v. Wayfair in their briefs, and I think that case is sort of instructive in a different way, which is there the Supreme Court gave a lot of weight to how state legislatures had decided the most efficient and effective way to collect taxes. And more than 30 states have made the same determination that Arizona has in terms of its three-tiered system. And I think that's owed some deference. And we've spent a lot of time talking about – can I finish with one brief point, Your Honor? Please do. We've talked a lot about sort of the analysis under prong two, and I understand that that's part of our burden if the analysis ever gets there. But I think it's really important to not miss step one, in that Arizona doesn't have to justify the reasons for its laws if it's not discriminatory. And we have facially even-handed laws here, and the record supports that there's no discrimination in effect. And I would point the Court to ER-56 and SER-15, showing that it's actually what plaintiffs say, quote, out-of-state retailers that, quote, dominate the local Arizona retail market. So Judge Smith is giving me permission to ask one more question. So you're right. Let's assume that we're at question two of the test. We've determined it's discriminatory. Now we're trying to wrestle with justification. And I'm still struggling with this point we've been talking about, so I'm going to ask it one other way. If Arizona had a rule that said that, as a retailer, you can only sell things that you acquired from a licensed wholesaler, but they didn't then further specify it has to be an Arizona-licensed wholesaler, just a licensed wholesaler from somewhere. So clearly if a product would be coming from a state where they don't license wholesalers, they don't have the three-tier system, then that's out, right? So Arizona says you must, as a retailer, acquire your product from a licensed wholesaler, wherever that is. Tell me what the state's interest, tell me what Arizona is losing by that system versus what they have, which says that the licensed wholesaler has to be Arizona-licensed. So a few things, Your Honor. It's losing the ability to regulate the wholesaler tier in a unique or more restrictive way than other states might. An intervener defendant's brief talks about how Arizona has some more restrictive laws at that tier. And that matters, right, because that's affecting the alcohol that's then sold to residents, so that can affect price, it can affect health and safety of the product. So that's one thing. So what's the health and safety interest? I guess I'm asking you to get really granular in the sense of, like, I guess you're losing a regulatory point, but to what end? Like, what are you not going to be able to do in terms of health and safety by not having that regulatory point and some other jurisdiction having it? When alcohol flows through our system and stops at the wholesaler tier in-state, wholesalers have the ability to inspect it, and often that happens when they're unpacking it for shipment. So looking at corks, sometimes product can be damaged or degradating in the process. And so our wholesalers in-state at that tier can check for that. They also play an important role because they can track all products sold in Arizona for identifying recalled product or things that need to be pulled back. You lose, again, that partnership and the ability to do that with a retailer located out of state that's not purchasing from a wholesaler that Arizona can regulate and work with to do that. Again, you have this effect on price when wholesalers in other states aren't being regulated as strictly as Arizona's wholesalers are. And so that's related to temperance and things like that. And then the enforcement piece of it, that even if you could get a retailer to buy from a licensed wholesaler somewhere that's operating in a different regulatory market, the state doesn't have the same enforcement power over that retailer located outside of its borders in terms of age verification, reporting, et cetera. And is it Arizona's position – I'm sorry, I'm going over your lead. Is it Arizona's position that those interests that you've listed, which I think are valid for sure, states have the authority to have those interests and try to serve them. Is it Arizona's position that you cannot serve those things that you've just listed out through a licensing scheme applicable to retailers? It's the state's position that you cannot achieve those things in the context of a three-tiered system in the same way. I think Tennessee Wine supports that, that physical presence of retailers is actually a nondiscriminatory, least restrictive way to preserve the three-tiered system and achieve these same interests. Could you devise another scheme that would allow for different flows of alcohol and different ways to regulate them? Yes, but we think, you know, as a matter of law, we don't have to do that. And the record shows that it would be more difficult for the state to achieve those same things. Thank you. Do you have any questions? I just have one final question. So I gather you're saying to us that even though there may be other ways to do it, that under the 21st Amendment and the Supreme Court law that we have in Tennessee Wine and Granholm, that we defer to the legislature. They have the right to make a choice that fits in this general scheme. We're not supposed to micromanage it and decide what we would do if we were members of the legislature. Is that your position? Yes, but I'm not even sure I'm urging that broad of a position because the legislature certainly doesn't have the right to come up with discriminatory ways to try and advantage Arizona companies or Arizona products. I think precedent makes this a fairly easy case, and the Supreme Court has said states have the power to require wholesalers to be present, retailers to be present. Arizona has no residency requirement, no durational requirement. It's just about physical presence, and we just don't think that's an open question for this Court. Okay. Thank you very much. Thank you. So now we have Ms. Porter for two minutes, maybe. Yes. Good morning, Your Honors. Hannah Porter on behalf of the Intervenor Defendant Wine and Spirits Wholesaler Association of Arizona. May it please the Court. I did want to address some of the questions that have just been going on about the wholesaler purchase requirement, and I think we can all agree that a necessary part of the three-tier system is to actually have that middle tier, the wholesalers by clients. And when we're talking about the three-tier system, I want to agree completely with what my colleague was already saying. There isn't a national three-tier system. Under the 21st Amendment, each state is empowered to create its own three-tier system or if they didn't want to have a three-tier system, something else. And it can choose how to regulate those interactions between the tiers. For example, in Arizona, wholesalers can't provide credit or bonuses to retailers. They can't sell their product to retailers at or below cost. They can't require retailers to purchase a certain amount of product. And that's all in Arizona law, but that's not necessarily what another state might choose to do in terms of regulating the interactions between wholesalers and retailers. And the way that the state implements those nondiscriminatory restrictions is through the in-state wholesaler purchase requirement. Can I ask you this, counsel? My recollection is that one of the things that motivates state legislatures after the 21st Amendment was to avoid involvement by, I'll use a general term, the mob or illegal elements in this business. Is that a factor that was considered? Does legislative history show that that played any role in Arizona's three-tier choice? You know, Your Honor, I don't know the specific legislative history in terms of what the original creation of the three-tier system in Arizona to that specific point. But we do know that when Arizona passed the farm winery statute that allowed that limited exception to go outside of the three-tier system, that they reaffirmed that it is the legislative intent that were any portion to be found unconstitutional, the court should act in a manner to preserve the three-tier system. So we know that it's very important to them to preserve the three-tier system. And I would say that what the plaintiffs are seeking is truly an exception to the three-tier system. They want wine to come and be sold to Arizona customers that has not gone through Arizona's specific three-tier system. Do either of my colleagues have questions? All right. Thank you very much. All right. Mr. Chanford, you get the wind up here. Thank you, Your Honor. The Supreme Court did not say that states could require wholesalers to be present. That appears in a parenthetical in the Tennessee Wine Opinion, or Granholm, maybe I've forgotten which one, where they are summarizing one position taken by a single justice in one case. They have not said that. No Supreme Court case has rebutted that dicta, right, though? None has followed it either. Okay. It simply has not been relevant. Tennessee Wine goes very carefully through all of this stuff. It goes through what the three-tier system means, and it goes through the history of it, and it goes through the reasons that we have it, and it comes to the conclusion quite clearly that the three-tier system does not mean a discriminatory three-tier system. They specifically say in summarizing this dicta from Granholm that the three-tier system does not sanction discriminatory features. Is it fair to say that the gravamen of your complaint is the discrimination prong, right? Correct. That's it. And you feel that the discrimination prong in this case is what? Excuse me. You feel that the discrimination prong is violated in this circumstance in what way? In request for admissions, the State admitted that a retailer physically located in Arizona may get a license that allows it to sell online and ship to consumers. A retailer physically located outside the State may not get that. Now, the actual way you get that through the legal, through the laws and regulation is a bit more complicated, but that was the simple answer, and the State has admitted it. And the State got up here and made a lot of assertions about what might deter people, what might be a good idea, but, again, in Tennessee Wine, they said assertions are not adequate to sustain a discriminatory feature of a law. There must be concrete evidence that it – I'm sorry, my time has expired, unless there are any questions. Let me ask my colleagues whether either has discretion. I think not. So thanks to all counsel for your argument in this interesting case. We appreciate your help. The case just argued is submitted, and the Court stands adjourned for the day.
judges: SMITH, BADE, FORREST